**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

KAREN S. MILLER,

                     **Plaintiff,**

-vs-                                     **Case No.  6:05-cv-1638-JGG**

COMMISSIONER OF SOCIAL
SECURITY,

                     **Defendant.**

_____

## MEMORANDUM OF DECISION

Plaintiff Karen S. Miller ["Miller"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying her application for a period of disability and disability insurance benefits.  *See* Docket No. 1 (complaint).  For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## I.  PROCEDURAL HISTORY

On August 26 2002, Miller filed a claim for disability insurance benefits and supplemental security income benefits, claiming disability as of May 7, 2002.  R. 69.  On August 24, 2004, the Honorable Jimmy N. Coffman, Administrative Law Judge ["ALJ"], held a ten-minute hearing on Miller's claim in Orlando, Florida.  R. 25-35 .  Non-attorney Robert Hicks represented Miller at the hearing.  R. 25.  The ALJ heard testimony from Miller.

On November 9, 2004, the ALJ issued a decision that Miller was not disabled and not entitled to benefits.  R. 17-23.  Following a review of the medical and other record evidence, the ALJ found that Miller could perform her past relevant work as an accounts payable clerk.  R. 22, Finding 7.  The

ALJ found that Miller nevertheless retained the residual functional capacity ["RFC"] to perform the full range of the physical exertional requirements of light work.  R. 21-22, Finding 6.  Applying the Medical-Vocational Guidelines, the ALJ concluded that Miller was not disabled.  R. 22, Finding 9.

On August 31, 2005, the Appeals Council denied review.  R. 6-9.  On November 22, 2005, Miller timely appealed the Appeals Council's decision to the United States District Court.  Docket No. 1.  On May 17, 2006, Miller filed in this Court a memorandum of law in support of her appeal. Docket No. 15.  On July 17, 2006, the Commissioner filed a memorandum in support of her decision that Miller was not disabled.  Docket No. 16.  The appeal is ripe for determination.

## II.     THE PARTIES' POSITIONS

Miller assigns three errors to the Commissioner.  First, Miller claims that the Commissioner erred by discounting both the treating and consultative physicians' assessments of Miller's RFC. Docket No. 15 at 2. Second, Miller claims that the Commissioner erred by improperly evaluating Miller's pain, a non-exertional impairment.  *Id.* at 2-3. Third, Miller claims that the Commissioner erred in finding Miller "not totally credible."  *Id.* at 3.

The Commissioner argues that substantial evidence supports her decision to deny disability benefits.  First, the Commissioner argues that the ALJ properly discounted Miller's treating physician's opinion because his conclusions were unsupported by objective evidence.  Docket No. 16 at 5.  Second, the Commissioner argues that Miller failed to meet the two-pronged standard for proving subjective pain complaints.  *Id.* at 7.  Third, the Commissioner argues that Miller's testimony regarding severity of the side effects she suffered was inconsistent with the record and thus supported the ALJ's credibility determination.  *Id.* at 8.

-2-

### III.   THE STANDARD OF REVIEW

#### A.   AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

#### B.   REVERSAL

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  The district court will reverse a

-3-

Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

## C.    REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir.

-4-

1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 - 92; *Cannon*

*v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[1] *Id.*

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

---

[1]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits. *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

### A.    DEVELOPING THE RECORD

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C.§ 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at 735 - 36.

Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).  This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Cowart*, 662 F.2d at 735 (citations omitted).

### B.    THE FIVE STEP EVALUATION

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520©.  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she

is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his or her residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then claimant is disabled.  20 C.F.R. § 404.1520(f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *See Jamison v. Bowen*, 814 F.2d 585, 588 - 89 (11th Cir. 1987); *Davis*, 985 F.2d at 534.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly.  *Vega v. Commissioner*, 265 F.2d 1214, 1219 (11th Cir. 2001).

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  In this step, the ALJ assesses the claimant's residual functional capacity ["RFC"].  This assessment measures whether

a claimant can perform past relevant work despite his or her impairment.  20 C.F.R. § 404.1520 (f);

*see also, Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The ALJ makes this

determination by considering the claimant's ability to lift weight, sit, stand, push, and pull.  *See* 20

C.F.R. § 404.1545(b).

The ALJ first considers whether the claimant has the RFC to perform the functional demands

and duties of a past job as actually performed by the claimant.  *See* SSR 82-61.  If so, the claimant is

not disabled.  If not, the ALJ then considers whether the claimant can perform the functional demands

of the job as it is generally performed in the national economy.  SSR 82-61.  In determining the

physical exertional requirements of work available in the national economy, jobs are classified as

sedentary, light, medium, heavy, and very heavy.  20 C.F.R. § 404.1567.

The claimant must prove disability on or before the last day of his or her insured status for the

purposes of disability benefits.  *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v.*

*Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416(i)(3); 423(a), ©.  If a claimant

becomes disabled after losing insured status, the claim for disability benefits must be denied despite

the claimant's disability.  *See, e.g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v.*

*Califano*, 574 F.2d 274 (5th Cir. 1978).

## C.    OTHER WORK

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof

shifts to the Commissioner to establish that the claimant could perform other work that exists in the

national economy.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  In determining whether the

Commissioner has met this burden, the ALJ must develop a full record regarding the vocational

opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). Exclusive reliance is not appropriate, however, "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also, MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert).

It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a

wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

### D.   TREATING PHYSICIANS

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician.  *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991);  *Sabo v. Commissioner of Social Security*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).  Similarly, the ALJ may reject any medical opinion if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also,* 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because those ultimate determinations are for the Commissioner. 20 C.F.R. § 404.1527(e).

The ALJ must, however, state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence.  *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

### E.     PAIN

Pain is a non-exertional impairment.  *Foote*, 67 F.3d at 1559; 826 F.2d at 1003.  Congress has

determined that a claimant will not be considered disabled unless he furnishes medical and other

evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment

which could reasonably be expected to produce the pain or symptoms alleged.   42 U.S.C. §

423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including

pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with

the objective medical evidence.  20 C.F.R. § 404.1529.  In determining whether the medical signs and

laboratory findings show medical impairments which reasonably could be expected to produce the

pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either
> (2) objective medical evidence that confirms the severity of the alleged pain arising
> from that condition or (3) that the objectively determined medical condition is of such
> a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone

can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*,

957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself,

conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### F.     CREDIBILITY

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate

specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.

*Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1532 (11th

Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not

-13-

disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

### G.     MEDICAL TESTS AND EXAMINATIONS

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also, Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may

be reversible error).  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  20 C.F.R. § 416.917 (1998).

## V.      **APPLICATION AND ANALYSIS**

### A.      **THE FACTS**

On January 31, 2002, Miller saw Aravind N. Pillai, M.D., complaining of back pain. R. 116. Dr. Pillai assessed chronic back pain and prescribed Voltaren,  Lortab and Elavil. R. 115 - 16.  On February 11, 2002, Ms. Miller reduced her intake of Voltaren because it was causing loose stools. *Id.* Dr. Pillai told Miller to take Imodium AD as needed for treatment of the diarrhea. *Id.*

On May 24, 2002, Miller saw Dr. Pillai for a general check-up.  R. 114.  Dr. Pillai noted that Miller had continued to experience pain, had lost her job, and intended to apply for disability.  *Id.* Examination revealed a tender spine, and Dr. Pillai again assessed back pain.  R. 113.  He prescribed Lortab.  *Id.*  Dr. Pillai further noted that Miller could not lift or stand or sit for more than thirty minutes.  *Id.*  In a letter dated June 11, 2002, Dr. Pillai represented that Miller suffered from chronic back pain, degenerative disc disease, and osteoporosis.  R. 112.  According to Dr. Pillai, Miller was unable to lift any more than ten pounds and is unable to sit or stand for more than thirty minutes at a time. *Id.*

On August 20, 2002, Miller went to Dr. Pillai's office complaining of back pain.  R. 111.  Dr. Pillai found that Ms. Miller had a supple neck, tenderness in her spine, and ordered bed rest. *Id.* Additionally, Dr. Pillai provided her with a Skelaxin sample.  *Id.*

On November 6, 2002, Miller returned to Dr. Pillai complaining of back pain.  R. 110.  Dr. Pillai's assessment remained unchanged from previous treatment notes, and he prescribed continued use of Lortab.  *Id.*

On January 6, 2003, Dr. Pillai filled out a questionnaire and  indicated that Miller had right leg and toes parasthesia, a decreased grip strength of 3/5, and was unable to stand more than ten minutes. R. 175.  He observed that Miller could walk with a normal gait without an assistive device and was able to squat, walk on her toes, and walk on her heels.  *Id.*

On January 8, 2003, Sam Ranganathan, M.D., examined Miller at the request of the Social Security Administration.  R. 117-20.  Miller stated that she could not stand for more than ten minutes without pain starting in her low back and radiating out into the legs.  *Id.*  Miller's day-to-day activities included yard work, but not mowing the grass; cooking for herself and her mother; doing laundry; mopping floors; and some vacuuming.

Examination revealed that Miller's motor system strength was 4/5 and equal bilaterally. R. 118.  Dr. Ranganathan noted that Miller had decreased sensation to touch in the anterior aspect of the lower 1/3 of the right thigh, and that tenderness and spasm was elicited in the paralumbar area. *Id.* Additionally, Miller exhibited positive straight leg raising in both legs in lying down position at 70 degrees.  *Id.*  Dr. Ranganathan observed that Miller was able to get on and off the examination table; sit comfortably in the waiting room and on the examination table; able to take off her trousers and shoes; and walk comfortably in the hallway.  *Id.*  Dr. Ranganathan diagnosed lumbosacral spine strain, noting that Miller had degenerative disc disease and osteoporosis by history.  *Id.*  He opined that

Miller was able to stand and/or walk two hours per day, sit for six hours, and lift and carry twenty pounds occasionally and ten pounds frequently. R. 119.

On March 27, 2003, state non-examining physician Francis L. Klingle, M.D. opined as to Miller's RFC. R. 121-28. Dr. Klingle determined that Miller could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; stand and walk about six hours in an eight hour workday; sit about six hours in an eight hour workday; and push and pull without restriction. R. 122. Dr. Klingle noted that Miller's physician had not prescribed back surgery, and that no surgery had been performed. *Id.* He noted that Dr. Ranganathan's consultative exam was "essentially benign" except for paralumbar muscle spasm and moderate range of motion limitations. *Id.* Dr. Klingle opined that Miller's low back pain symptoms were "partially credible." R. 126. Dr. Klingle concluded that the objective evidence indicated that Miller could function within the limits of the RFC as assessed in his report. R. 127.

On May 1, 2003, Miller visited Dr. Pillai complaining of lower back pain. R. 172. Examination revealed limited spine movement. *Id.* Dr. Pillai noted that Miller had not been taking her medications. *Id.* Dr. Pillai assessed back pain, and prescribed Lorcet, Oscal, and daily supplements. *Id.* On July 2, 2003, Miller saw Dr. Pillai for treatment of her back pain and complained that she was experiencing headaches. R. 170. He prescribed continued Lorcet. *Id.*

On September 3, 2003, Dr. Pillai examined Miller and noted that she had been having severe headaches. *Id.* Dr. Pillai reconfirmed his previous diagnosis, with the addition of degenerative disc disease. R.171. He prescribed Lorcet and provided Miller with a sample of Lexapro. R. 170. On November 5, 2003, Miller returned to Dr. Pillai with complaints of back pain. R. 171. Dr. Pillai

-17-

discontinued Miller's Lorcet and prescribed Percocet.  *Id.*  In a follow up visit on March 8, 2004, Miller complained to Dr. Pillai that her pain was worse lately, and that she could not walk or stand.  R. 168.  Dr. Pillai prescribed continued use of Percocet.  *Id.*

At a hearing held August 24, 2004, Miller testified that her previous job as an accounts payable clerk entailed data entry in to a computer billing system — sedentary work.  R. 29.  She stated that, because of her back pain, she could not sit for more than forty-five minutes to an hour without having to get up and walk around.  R. 30.  She testified that the pain in her back was a seven on a scale of one to ten with medication, and that it spreads into her hips and legs.  R. 30-31.  Miller further testified that her medications made her nauseous and dizzy.  R. 31.  Miller stated that she stayed home and watched television most of the time, but walked her dog and visited with friends in the neighborhood about four times per day.  R. 32.  She testified that she was able to go shopping for groceries and personal items, clean, dust and mop her home with some difficulty, stand for fifteen to twenty minutes at a time, and lift no more than a gallon of milk.  R. 32-33.

## B.    THE ANALYSIS

Miller first contends that the ALJ improperly dismissed the opinions of Dr. Pillai and Dr. Ranganathan, the only two examining physicians on record, and that in so doing, the ALJ erroneously concluded that Miller could perform light work.  Docket No. 15 at 6-8.  The Commissioner argues that Dr. Pillai's opinion that Miller could only lift ten pounds and was unable to sit or stand for ten minutes is inconsistent with his own treatment notes and unsupported by other evidence.  Docket No. 16 at 5.  The Commissioner further contends that Dr. Ranganathan, as a non-treating physician, is not entitled

to deference and that his functional assessment was internally inconsistent with his clinical observations.  *Id.* at 7.

Though the opinions of treating physicians are normally entitled to great weight, and sometimes controlling weight, in this case, the ALJ properly determined that Dr. Pillai's opinion was entitled to neither.  An ALJ may discount a treating physician's opinion regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d at 583.  Further, an ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an ultimate opinion on a claimant's residual functional capacity. *see* 20 C.F.R. §§ 404.1545 and 404.1546.

The medical evidence may contain general clinical observations such as "spine tenderness," and nonspecific diagnoses such as "chronic back pain."  The law permits the ALJ to look for objective evidence that corroborates general clinical observations.  The record contains no radiology or MRI reports and no lab results.  Dr. Pillai's treatment notes are devoid of references to lab tests or specific diagnostic procedures.[2]  The ALJ gave little weight to Dr. Pillai's opinion that Miller was limited to standing only ten minutes at a time because it was based on Miller's subjective complaints, and not on adequate clinical findings established in the record.  R. 21.  In this sense, Dr. Pillai's opinion as to Miller's RFC was conclusory and unsupported by objective medical evidence.  The ALJ sufficiently articulated his reasons for discounting the opinion, and there is no discernible error with regard to Dr. Pillai.

---

[2]With few exceptions, Dr. Pillai's notes are handwritten, barely legible, and often in medical shorthand.  If any such lab tests or diagnostic procedures were ordered or performed, they are not in the record, and the parties have not identified them.

-19-

Dr. Ranganathan examined Miller as a consultant, and noted that she had a positive straight leg test, but that she was able to walk on her toes, heels, and with a normal gait. Dr. Ranganathan further observed that Miller sat comfortably in the waiting room and walked comfortably down the hall. Despite these observations, Dr. Ranganathan opined that Miller was limited to sedentary work. The ALJ addressed this inconsistency, and rejected Dr. Ranganathan's opinion. The ALJ specifically noted that Dr. Klingle, the state non-examining physician, had taken into account Dr. Ranganathan's observations when forming his own RFC assessment. Dr. Klingle described Dr. Ranganathan's exam as "essentially benign," and opined that Miller's symptoms were only "partially credible.

The ALJ's rejection of Dr. Raganathan's opinion that Miller was limited to sedentary work was thus supported by substantial evidence. It is worth noting that although the ALJ ultimately determined that Miller could perform light work, her past relevant work was sedentary and required even less functional capacity to perform. It therefore follows that even if Dr. Ranganathan's opinion were to be afforded greater weight, the end result would still be the same.

Next, Miller argues that the ALJ improperly evaluated Miller's pain, a non-exertional impairment. The pain standard requires evidence of an underlying medical condition, and either objective medical evidence that confirms the severity of the alleged pain arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. Miller has established an underlying medical condition but has failed to meet either of the other necessary requirements. There is no objective evidence in the record confirming the severity of her pain.

-20-

Further, Dr. Pillai's treatments were of a conservative nature, consisting of bed rest, muscle relaxants, and pain medication, and do not suggest that Miller's condition is of such a severity that it can be reasonably expected to give rise to debilitating pain.  Miller herself told Dr. Ranganathan that she performed yard work (exclusive of mowing the grass); cooking for herself and her mother; doing laundry; mopping floors; and some vacuuming.  Dr. Ranganathan personally saw that Miller could get on and off the examination table; sit comfortably in the waiting room and on the examination table; take off her trousers and shoes; and walk comfortably in the hallway.  Miller further testified that she walked her dog three to four times a day a distance of one to one and a half blocks.  The ALJ considered the treatment records, Miller's admitted day to day activities, and Dr. Ranganathan's independent observations  He did not err in finding that Miller's pain testimony was "exaggerated and disproportionate" and that her alleged pain – a seven out of ten, preventing her from lifting a gallon of milk or standing for more than fifteen to twenty minutes –  was not reasonably expected from her condition.

Lastly, Miller contends that the ALJ erred by not finding her allegations of pain "totally credible."[3]  The Commissioner argues that the ALJ properly found Miller's activities inconsistent with her subjective complaints, and that her testimony regarding side effects was inconsistent with the treatment record.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.

---

[3]Miller argues that participation in everyday activities of short duration, such as housework, does not disqualify a claimant from disability.  Docket No. 15 at 12 (citing *Lewis*, 125 F.3d at 1441).  However, though a claimant's everyday activities generally do not rise to the level of substantial gainful activity, and thus do not act to disqualify a claimant at step one of the five step evaluation, this does not prevent the ALJ from taking into account such activities when evaluating subjective pain testimony or credibility.  *Cf. Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987).

Here, the ALJ clearly articulated his credibility finding.  He noted that, despite her pain, Miller performed yard work, cooked, mopped, vacuumed, and walked her dog.  Further, the ALJ addressed the fact that Dr. Ragnathan observed Miller getting on and off the examination table, sitting comfortably in the waiting room, and walking comfortably in the hallway.   Finally, the ALJ found the record unsupportive of Miller's testimony that her medicine made her dizzy and nauseous. The only side-effects noted in Dr. Pillai's treatment notes were loose stools and headaches — side effects addressed by prescribing Imodium AD and changing Miller's pain medication.  The ALJ did not err, and the Court will not disturb his clearly articulated credibility finding as it is substantially supported in the record.

## VI.    CONCLUSION

For the reasons stated above, the decision of the Commissioner is **AFFIRMED**.  The Clerk should enter a judgment and close the case.

**DONE AND ORDERED** this 16th day of March, 2007.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Jimmy N. Coffman
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL            32817